Virginia A. LESLIE, Plaintiff,

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

No. Civ.A. 3:03–CV–0749.

United States District Court, M.D. Pennsylvania.

Nov. 26, 2003.

Thomas D. Sutton, Levanthal & Sutton, Langhorne, PA, for Plaintiff.

Justin Blewitt, U.S. Attorney's Office, Scranton, PA, for Defendant.

### ORDER

CONABOY, District Judge.

AND NOW, this twenty-sixth day of November 2003, it appearing to the Court that:

1. The above-captioned matter involves Plaintiff Virginia A. Leslie's application to receive Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401–433, and the Commissioner of Social Security's denial of benefits, (Doc. 1);

2. On May 5, 2003, Plaintiff filed the above-captioned action appealing to this Court for review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), (Doc. 1);[1]

3. The matter was referred to Magistrate Judge J. Andrew Smyser who issued a report and recommendation November 6, 2003, (Doc. 9);

4. The Magistrate Judge recommends that the case be remanded to the Commissioner for further consideration, (Doc. 9 at 17);

5. Plaintiff did not file objections to the Report and Recommendation and Defendant waived the opportunity to do so, (Doc. 10).

**IT FURTHER APPEARING TO THE COURT THAT:**

1. When a magistrate judge makes a finding or ruling on a motion or issue, his determination should become that of the court unless objections are filed. *See Thomas v. Arn*, 474 U.S. 140,

---

1. This is Plaintiff's second appeal to this Court on this matter. She filed her original appeal on December 20, 2001, Civil Action No. 3:01–CV–2424. On August 26, 2002, the case was remanded to the Commissioner for further consideration. The current appeal stems from the Commissioner's decision following reconsideration.

150–53, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). Moreover, when no objections are filed, the district court is required only to review the record for "clear error" prior to accepting a magistrate judge's recommendation. *See Cruz v. Chater,* 990 F.Supp. 375, 378 (M.D.Pa.1998); *Oldrati v. Apfel,* 33 F.Supp.2d 397, 399 (E.D.Pa.1998).

■ 2. When reviewing the denial of benefits, the Court must determine whether the denial is supported by substantial evidence. *See, e.g., Brown v. Bowen,* 845 F.2d 1211, 1213 (3d Cir.1988).

3. We concur with the Magistrate Judge's determination that the ALJ did not properly address the issue of Plaintiff's credibility and did not properly evaluate her subjective symptoms. (Doc. 9 at 8–13.)

4. We conclude that the Magistrate Judge correctly determined that the ALJ's reconsideration on remand (Civil Action No. 3:01–CV–2424; *see supra* n. 1) of Plaintiff's ability to perform her past relevant work, an issue which was not the subject of the remand, was improper. (*Id.* at 14–16.) Therefore, on remand the Commissioner must proceed on the basis of the original Step Four finding that Plaintiff does not have the residual functional capacity to perform her past relevant work.

5. Finally, we agree with the Magistrate Judge's determination that the ALJ must expressly consider and discuss and make a finding or findings as to the opinion of Plaintiff's treating orthopedist, Carl P. Sipowicz, M.D. (Doc. 9 at 16–17.)

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1. The Magistrate Judge's Report and Recommendation, (Doc. 9), recommending that the case be remanded to the Commissioner for further consideration is ADOPTED;

2. This case is REMANDED to the Commissioner for further consideration consistent with this opinion and the Magistrate Judge's Report and Recommendation, (Doc. 9);

3. The Clerk of Court is directed to close this case.

## REPORT AND RECOMMENDATION

SMYSER, United States Magistrate Judge.

The plaintiff has brought this civil action under the authority of 42 U.S.C. § 405(g) to obtain judicial review of the decision of the Commissioner of Social Security denying the claim of the plaintiff for Social Security disability insurance benefits.

On June 14, 1995, the plaintiff, Virginia A. Leslie, applied for disability insurance benefits. She claimed that she became disabled on April 30, 1992, as the result of chronic degenerative changes, and herniated or bulging discs. Her claim was denied initially and on reconsideration. The plaintiff filed a request for a hearing, and a hearing was held before an administrative law judge (ALJ) on March 11, 1999. Tr. 25–67.

At this hearing the plaintiff, who was represented by her attorney, testified, and her husband testified. A vocational expert also testified. Ms. Leslie, 47 years old at the time of the hearing, testified that she graduated from high school, and has two years of college. She was 5'3½" and weighed 177 pounds. She has a driver's license. She last worked in an accounting job as a re-insurance accounting manager, in January of 1991. The work was performed seated at a computer. She oversaw the work of about thirty persons. She was let go from the position. She tried to do some other work, but her condition caused her to miss work, and she last worked in April of 1992.

She recalled that she had experienced an episode of back pain and immobility in

1989 after trying to move a filing cabinet. She was hospitalized then for a few weeks. She was in traction. She returned to work. Later, her back went out again. She was again hospitalized. She underwent physical therapy. There was no improvement. This then culminated in her 1992 cessation of working.

She stated that she is limited to sitting for about 15 minutes. There have been times when she could not arise from a seated position without help. She can stand for short periods of time, and her best practice is to alternate sitting and standing for short periods of time.

She tried working in a job boxing Christmas items. She placed light items in boxes, for one day. The day left her needing bed rest for a long period of time.

Her lower back pain is a burning sensation.

She drives her husband to and from his bus stop to go to work. She drives her daughter to the bus stop. She does not go grocery shopping without her husband. She stated in her testimony that she does not go upstairs in her home to her daughter's room. Her husband does many of the household chores. She does the laundry, however, a couple of loads a day.

She has also developed a condition of anal cancer, diagnosed in December of 1998. She has finished a course of radiation therapy and a course of chemotherapy.

She takes Darvocet for her pain. She takes Motrin, which prevents back spasms.

Alex Leslie, her husband, testified that he commutes two and a half hours to his insurance company job in Brooklyn every day. He stated that his wife's back condition presents her most serious physical problem, although he is most worried about her cancer.

He does almost all of the household work. He has taken his wife to the hospital on occasions. She has had physical therapy. He massages her back for her every day. She cries all of the time as the result of her back pain.

He stated that he believes that she can not work because she can not sit. He stated that she sometimes goes upstairs in their home to use the computer there. He stated that his wife is not allowed to touch the laundry or to move the laundry basket.

He stated that his wife's back condition limits their activities. Although they were able to go together with their daughter to Disney World, his wife's limitations as to standing or walking caused them to have to extend their trip for several days to permit the family to try to see most of the facility.

Marianne Starosta, a vocational expert, testified that, assuming that Ms. Leslie (considering her age, education and work experience) has a work capability for sedentary work with a sit-or-stand option and can not crawl, crouch, kneel, climb, or squat, push or pull with the legs, and could not do a job at a computer, there are jobs in the economy that she could perform: hand assembly, testing electronic items, hand packaging, inspection of manufactured parts and goods, and collating (as in a print shop).

On April 30, 1999, the ALJ issued his decision denying the plaintiff benefits. Tr. 12–19.

The plaintiff filed a complaint with this court on December 20, 1991.

In a Report and Recommendation on August 1, 2002, it was recommended that the case be remanded to the Commissioner, Tr. 216–230, and by Order of August 26, 2001 it was remanded.

After remand, a hearing was held on February 13, 2003. Tr. 286–342. By Decision of February 27, 2003, the claim was denied. Tr. 196–204. This civil action was

initiated by a complaint filed on May 5, 2003. The answer and administrative record were filed on July 24, 2003. Briefs were filed, Docs. 6, 7 and 8. The case is ripe for decision.

The plaintiff argues that on remand the ALJ erred in that he failed to consider a treating orthopedist's opinion, that it was an error for the ALJ on remand to find that the plaintiff could return to her past relevant work when the earlier ALJ had found her unable to perform her past relevant work, and that the ALJ erred in that he discounted the plaintiff's credibility based upon an improper analysis.

If the Commissioner's decision is supported by substantial evidence it must be affirmed. 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir.1999) (quoting *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir.1995)). Substantial evidence is more than a mere scintilla of evidence but less than a preponderance. *Brown v. Bowen,* 845 F.2d 1211, 1213 (3d Cir.1988).

██ A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir.1993). However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966).

██ To facilitate review of the Commissioner's decision under the substantial evidence standard, the Commissioner's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir.1981). Conflicts in the evidence must be resolved and the Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706–707. In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole. *Smith v. Califano,* 637 F.2d 968, 970 (3d Cir.1981).

The Commissioner has promulgated regulations creating a five-step process to determine if a claimant is disabled. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and, (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920.

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that she is unable to engage in her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir.1993).

In this case, the ALJ after the first hearing determined that the plaintiff is not engaged in substantial gainful activity, that the plaintiff has a severe combination of impairments ("chronic back pain, arthritis, obesity, and a history of anal canal cancer") (Tr. 14), that her impairments do not meet or equal any listed impairment(s), and that she is not able to perform her

past relevant work. The ALJ further determined that the plaintiff during the relevant (insured) period of time had the residual functional capacity to perform a limited range of sedentary work and on the basis of the testimony of the vocational expert found that she could perform a significant number of jobs given her residual functional capacity, age, work experience and education. On that basis, the ALJ decided that the plaintiff was not disabled and not therefore entitled to disability benefits.

After the second hearing, the ALJ found severe impairments, no Listings equivalency, that the plaintiff was not credible as to her pain and that during the relevant period of time she could perform her past relevant work as a reassurance account supervisor.

■ Addressing first the issue relating to the credibility of the plaintiff, we note that the ALJ reached the adverse credibility determination here, after finding impairments that could reasonably be expected to cause symptoms related to her back problems because "there are no findings on any of her MRI studies that would account for the disabling pain that she has alleged." Tr. 201. Her MRI testing "showed evidence of disc bulging and possible minimal herniation at L4–5 but no herniation at any other level...." Tr. 261. The ALJ stated that "this opinion is also corroborated by the testimony of the medical expert." Tr. 201.

We have determined upon an analysis of the record and the decision of the ALJ that the ALJ discounted the credibility of the plaintiff by way of an application of an improper credibility analysis, particularly in the reliance upon the medical expert's testimony.

The medical expert, called by the ALJ, Dr. Askin, testified:

[B]ack pain, once you get it, is just a harbinger of having achieved middle age and that's it. Because you have an episode of back pain that's [INAUDIBLE] does not mean that you can't be vigorous. And if she would be more vigorous, if she would push through the discomfort, she would be [im]proved just by having done so. And so the problem is that people don't want to do that. They say, you know, if it hurts, I'm not going to do it. And that's why you put limitations on. If she, instead of being inactive decided that she'd be willing to tolerate a certain amount of discomfort in order to get better, she would make herself better. I mean, that would be the more [INAUDIBLE] explanation of what I was talking about.

Tr. 297–298.

It's [INAUDIBLE] it's not exactly what I had in mind. I get back pain myself. I have back pain right this minute, and it's just a question of what you're willing to put up with in order to, you know, get the job done or to be functional. And if you get to that age when you have your aches and pains and you just decide you're not going to be functional, that's the whole limitation. It's more or less you choose not to tolerate it. But if you're willing to tolerate it and willing to push through it, there's nothing to prevent you from being functional. And I certainly would say that you could have pain so bad it would lay you off. It does happen. But those should be infrequent episodes, and they shouldn't preclude you from being gainfully employed on a long-term basis.

Tr. 298.

Well, I think disability from back pain is a not a medical problem, it's a societal problem. And it's not that people don't get back pain, it's just that in a society where we credit people's self-reported limitation, that's the only disability. In other cultures, other societies, they don't

have disability from back pain the way that we do.

Tr. 299.

The ALJ found the testimony of the medical expert "to be credible and consistent with the medical evidence of record." Tr. 200. This statement of the ALJ's finding is preceded by these observations:

> Furthermore, Dr. Askin testified that this is strictly a pain-related evaluation of her condition prior to her date last insured of December 31, 1997. He noted that many people in the claimant's age category have the type of pain associated with degenerative disc disease such as the claimant is diagnosed with. He stated that pushing through the discomfort with activity would significantly improve her pain without harming her health.

Tr. 200.

Under the applicable law and regulations, the first question as to pain is whether the objective medical condition could reasonably produce such pain. Dr. Askin and the ALJ would have the legal standard for an evaluation by the Commissioner of a claimant's subjective symptoms such as pain changed from one that looks to whether there is an objective condition that would reasonably produce the subjective symptom to one that asks whether the claimant's underlying impairment would be harmed by the exertion of working. But the former and not the latter is the applicable standard.

The credibility of the plaintiff as to whether she was unable to work as the result of her pain was assessed by the ALJ in terms of whether were she to have worked with her pain she would have been worsening or improving her condition. That is not a prescribed or approved consideration under the statute or the regulations.

Interestingly, the medical advisor's prescription for an improved condition by way of working through the pain does not prevent him from selecting sedentary or light duty as appropriate, Tr. 295, although he also stated that if she exerted past that it would not cause her any health problems. There is in the medical advisor's diagnosis an exertional line at which substantial gainful activity, while still not harmful to the person, should be avoided because it may provoke pain episodes. Tr. 295.

Dr. Askin, the medical expert, uses his own back pain and his own work motivation and performance as a gage and as a reference in his evaluation and explanation. Tr. 297–298. The doctor's reference to his own subjective experiences to lend support to a medical opinion, and the ALJ's acceptance of it, implies that the ALJ has given greater weight to the subjective pain management philosophies and practices of the doctor than those of the claimant. No explanation for this choice is given by the ALJ, however.

Clearly, the ALJ is in no better position to evaluate the relative degree of pain or the respective natures of the pain experienced by Dr. Askin and by Virginia Leslie than is Dr. Askin or anyone else.

For all we know, Dr. Askin may have erred in his assumption that his own back pain is somehow equal to or greater than Leslie's back pain (Tr. 298) and that the only difference is in his (Dr. Askin's) willingness to put up with his own back pain to get the job done in contrast to Leslie's unwillingness to put up with her back pain resulting in the job not getting done. His assumption that Leslie, unlike himself, has *chosen* not to tolerate her back pain and that she, unlike himself, is "not willing to push through it" may be wrong. Furthermore, if Dr. Askin's analysis of whether a particular medical impairment would reasonably be likely to result in certain subjective conditions is resolvable by him only through reference to his own back pain,

then he has or appears to have eschewed the capacity of medical science to provide any objective information helpful to the Commissioner on the issue of whether the claimant's pain is disabling. Dr. Askin's process of reasoning from his proposition that "back pain is a very common problem in the general population" (Tr. 301) to his analogy of a person with back pain seeking disability benefits to a school kid feigning sickness to avoid an exam, is not self-apparently acceptable as a probative medical opinion. Nor is his simplification and transformation of the issue to a distinction of a person with back pain from a quadriplegic. The issue is not whether pain alone necessarily prevents the performance of a physical movement. We know that it does not. That is not the issue.

Dr. Askin's philosophy about handling pain and motivation, if it may be accepted as an adequate basis under the guise of "medical expert opinion" to trump the credibility of statements about subjective symptoms of someone with an objectively established impairment, displaces the statute and the Commissioner's regulations.

The opinion of Dr. Askin is undermined by Dr. Askin's own identification of the source of his opinion as being in sociology, and cultures (Tr. 299), a field in which he is not shown to have any particular expertise.

Moreover, Dr. Askin, upon actually addressing the directly pertinent issue of the correlation between the plaintiff's reporting of her pain and her actual pain, actually affirms rather than rejects the plaintiff's statements:

> Q. Do you have any indication from your review of this record that this individual does not feel the pain that she has reported consistently over the years?

A. No .... [1]

Tr. 299.

For the reason that the ALJ has not properly addressed the issue of the credibility of the plaintiff, and has not properly evaluated her subjective symptoms, the case should be remanded again and it will accordingly be recommended that it be remanded again.

The plaintiff also presents the argument that the Commissioner, having found the claimant to be unable to perform her past relevant work, Tr. 19, erred in determining upon remand that she can perform her past relevant work. Tr. 203. The plaintiff argues that the ALJ's latter finding that the plaintiff can return to past relevant work violates the law of the case doctrine. The ALJ's readjudication of the issue whether the plaintiff had satisfied her burden of proving that she is unable as the result of an impairment to perform her past relevant work, the Step Four issue, 20 C.F.R. § 404.1520(f), is not consistent with "the important concept of finality" which is a fundamental precept of common law adjudication. *Chrupcala v. Heckler*, 829 F.2d 1269, 1273 (3rd Cir.1987) [*citing McCuin v. Secretary*, 817 F.2d 161 (1st Cir.1987) and *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)]. The defendant argues that because the Court did not decide the past relevant work issue, a law of the case application is not appropriate. However, the defendant does not address either the legal or the factual merits of a revisiting by the Commissioner of the Step Four issue. The defendant also does not address the precedents and authorities cited by the plaintiff.

---

**1.** Dr. Askin goes on to again emphasize that he, unlike Leslie, would and does respond to such pain by pushing on.

The Commissioner here had decided that the plaintiff had carried her burden of proving that she can not perform past relevant work. That finding and that issue were not involved in the first appeal, except as a part of the given background against which the issues actually presented were presented and decided. The second ALJ did not discuss the earlier determination of an inability to perform past relevant work, and did not state a rationale for reopening the issue and resolving it against the claimant, but simply went forward as though all factual issues were to be considered anew.

The cited "important concept of finality" does not permit the Commissioner to tacitly reject important material findings already made in the adjudication that have not been made the subject matter of an issue on appeal.

The Report and Recommendation of August 1, 2002, Tr. 216–230, adopted by the Court, Tr. 232, recommended a remand "for further analysis and consideration at Step Three and for consideration and discussion of the reports and findings of Dr. Khan". The defendant has not argued with specific reference to this remand order that it permitted a readjudication of the Step Four issue, but asserts that the effect of a remand order is to vacate the prior ALJ decision by operation of law and is, further, to vacate all of the components of that decision. We do not agree. The Commissioner is no more entitled to reopen issues decided favorably to the claimant and not challenged on appeal than would be the claimant to reopen issues decided favorably to the Commissioner and not challenged on appeal, such as for example the Commissioner's decision here against the claimant on the Step Three issue. Tr. 203.

On remand, the Commissioner must proceed on the basis of the given finding at Step Four that the claimant does not have the residual functional capacity to perform her past relevant work.

The other argument of the plaintiff is that the ALJ failed to consider the opinion of Carl P. Sipowicz, M.D., a treating orthopedist who on February 10, 2003 completed a Lumbar Spine Medical Source Statement of Functional Disabilities, in which he stated the opinion that Leslie prior to December 31, 1997 could not sit or stand/walk more than two hours each in an eight hour day. He also stated that her impairments would cause her to miss work more than three times a month. Tr. 266–271.

The defendant on this appeal presents factual arguments that Dr. Sipowicz's opinion is not entitled to weight. These factual arguments assume incorrectly that the district court on appeal considers factual issues.

The defendant also argues that the report of Dr. Sipowicz, because it was considered by and mentioned by the testifying medical expert, was considered by the ALJ. But the fact that the medical expert discounted the treating physician's opinion(s), and why, does not reveal whether the ALJ rejected the treating physician's opinion(s), or why.

On remand, the ALJ should expressly consider and discuss and make a finding or findings as to the opinion(s) of Dr. Sipowicz as stated in the February 10, 2003 report.

It is recommended that the case be remanded to the Commissioner for the reasons and for the purposes stated in this Report and Recommendation.

November 6, 2003.