**Frank LAMACCHIA, Plaintiff,**

v.

**Jo Anne BARNHART, Defendant.**

**No. CIV.A. 04–2390.**

United States District Court,
E.D. Pennsylvania.

Dec. 23, 2004.

Meyer Silver, Esquire, Silver & Silver, Ardmore, PA, for Plaintiffs.

Teri C. Smith, Esquire, Social Security Administration, Philadelphia, PA, for Defendants.

### MEMORANDUM & ORDER

KATZ, Senior District Judge.

Plaintiff Frank LaMacchia brings this suit against Defendant Jo Anne Barnhart, in her official capacity as Commissioner of the Social Security Administration, seeking judicial review of an administrative denial of disability benefits, pursuant to 42 U.S.C. § 405(g). Plaintiff claims that the ALJ's finding that he was not disabled between January 1, 1994 and September 29, 2003 was both legally erroneous and unsupported by substantial evidence and, therefore,

must be reversed. Now before this court are the parties' cross motions for summary judgment. For the reasons set forth below, the Plaintiff's motion is granted and the Defendant's denied.

### Background

Plaintiff is a 51–year–old former longshoreman, who suffered a debilitating fall on a patch of ice sometime between 1993 and 1994. As a result of that accident, Plaintiff has experienced extreme neck and lower back pain, which has radiated into pain and numbness in his left leg, as well as anxiety, depression, and sleeplessness. Plaintiff also suffers from cardiac impairments, which have caused him chest pain, shortness of breath, and fatigue, in addition to problems with his shoulder that hamper his ability to reach for and handle objects. He has not engaged in substantial gainful activity since January 1, 1994, his alleged disability onset date.

Plaintiff began the lengthy legal process of trying to obtain disability benefits on March 21, 1995, when he protectively filed for Disability Insurance Benefits and Supplemental Security Income payments. His applications were denied, as he was found not to be disabled by both initial and reconsidered determinations, as well as in a post-hearing opinion issued by Administrative Law Judge Owen B. Katzman on September 24, 1999. Plaintiff sought timely review of the ALJ's decision in this court.[1]

On review, Judge Dubois of this court remanded the case to the Commissioner with instructions to reconsider the severity of Plaintiff's back condition, as well as the extent to which his depression might affect his ability to work. On remand, in a post-hearing opinion issued on January 29,

---

**1.** After seeking judicial review in this court, Plaintiff subsequently filed a new application for Supplemental Security Income on January 29, 2002, which raises substantially the same claims as are at issue here, and, as such, is subsumed by the adjudication in this court of Plaintiff's original March 1, 1995 applications.

2004, Administrative Law Judge Javier Arrastia agreed with Judge Katzman that Plaintiff had not been disabled beginning in 1994 but found that he was legally disabled beginning on September 30, 2003, the date of Plaintiff's fiftieth birthday.[2] Although this decision was partially favorable to Plaintiff, he nonetheless contends that the unfavorable portion of the ALJ's finding that he was not disabled between January 1, 1994 and September 30, 2003 should be reversed. For the reasons set forth below, this court agrees.

## Discussion

■ In reviewing an administrative decision denying benefits in a social security matter, this court must uphold any factual determination made by the ALJ supported by "substantial evidence." 42 U.S.C. § 405(g). While substantial evidence is "more than a mere scintilla," it is not "a large or significant amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (citations and quotations omitted); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). Rather, it is such relevant evidence that would be sufficient to support a reasonable conclusion. *Pierce*, 487 U.S. at 565, 108 S.Ct. 2541.

■ In addition to having substantial evidence review of an ALJ's findings of fact, this court retains plenary review over the ALJ's application of legal principles. *Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir.1995). As such, even if a decision made by an ALJ is supported by substantial evidence, this court can overturn that decision if it finds that it was based upon incorrect legal standards. *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir.1983).

The Social Security Administration has promulgated a five-step sequential evaluation process for an ALJ to determine whether or not a claimant qualifies as disabled under the Social Security Act. First, the ALJ must consider whether the claimant partakes in substantial gainful activity; if so, he or she is not disabled. For steps two and three, the ALJ turns to the question of whether the claimant's impairments can be characterized as "severe." If not, the claimant is not disabled. If, however, a claimant's impairment is one that has been deemed severe by the Administration, then the claimant is disabled per se. Fourth, the ALJ considers the claimant's residual functional capacity, which measures the most that the claimant can still do despite his or her limitations, as well as any past relevant work. If the claimant retains the residual functional capacity to perform his or her past relevant work, then he or she is not disabled. Fifth and finally, the ALJ considers whether the Administration can prove that the claimant can make an adjustment to other work that exists in significant numbers in the national economy. If so, the claimant is not disabled. 20 CFR § 416.920.

In this case, the ALJ committed two reversible errors when conducting the sequential analysis. First, the ALJ's finding during step four that the Plaintiff possessed the residual functional capacity to perform light work is unsupported by substantial evidence. To the contrary, the record makes plain that the Plaintiff's back problems and related limitations stemming

---

**2.** Upon turning 50, Plaintiff became a person "closely approaching advanced age" according to the Social Security Guidelines. That characteristic, coupled with the fact that the ALJ found that Plaintiff was illiterate, had previous experience only in unskilled work, and was able to perform no more than light work rendered Plaintiff disabled as a matter of·law after September 30, 2003. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.09 (directing a finding of disability for claimants with the foregoing four characteristics).

therefrom have rendered him unable to perform the tasks inherent in the Administration's definition of light work. Second, with respect to step five, the ALJ's decision that a finding of disability was directed by the guidelines was based upon incorrect legal standards because, in addition to having exertional limitations, the Plaintiff clearly suffered from non-exertional limitations. As such, the ALJ was required as a matter of law to consider the effects of those non-exertional limitations instead of relying exclusively on the grids to direct a finding of not disabled.

### Residual Functional Capacity

■ In conducting step four, the ALJ found that Plaintiff retained the residual functional capacity to perform essentially the full range of light work. Record at 159. See 20 C.F.R. 416.967(b) (defining light work as involving lifting or moving 10 pounds frequently and 20 pounds occasionally, in addition to a good deal of standing or a good deal of sitting with pushing and pulling of arm or leg controls). This finding, however, was not supported by substantial evidence. The ALJ failed to consider the extent to which the Plaintiff's severe neck and back impairments erode his ability to lift, push, and pull objects. As such, the decision that the Plaintiff is not disabled must be reversed.

The record in this case is replete with evidence that Plaintiff's back and neck impairments prevent him from performing the duties inherent in even light work. Dr. Baldino diagnosed Plaintiff with, among other ailments, post traumatic disc herniation, cervical and lumbar disc disease, and post traumatic radiculopathy before concluding that Plaintiff had suffered a "serious and permanent injury" that has caused "a serious debilitation to his person and negatively affected his ability to perform his normal activities of daily living." Record at 332. An orthopedic examination by Dr. Sachs resulted in a diagnosis of a cervical and lumbosacral strain and sprain, as well as a lumbar spine herniated disc with lumbar radiculopathy. Record at 254. Even Social Security's own examiner, Dr. Nichols, found that Plaintiff had two herniated lumbar discs, two herniated cervical discs, and experienced pain in his back and left leg that increases with exertion. He also noted that Plaintiff's neck pain goes into his right arm and causes that arm to fall asleep and to drop things frequently. In addition, Dr. Nichols' report mentions that Plaintiff has had injections to his cervical spine, but that those treatments did not provide him with pain relief. Record at 389.

Despite the substantial medical evidence set forth in Plaintiff's original hearing to the contrary, the ALJ found that the Plaintiff was able to perform light work almost exclusively based on the testimony of medical expert Dr. Askin, who did not examine the patient but instead was called upon to summarize and assess the findings of Plaintiff's treating physicians. Dr. Askin downplayed the severity of Plaintiff's injuries [3] but offered no explanation as to why he believed that Plaintiff was capable of performing light work, despite the fact

---

**3.** Dr. Askin testified, "You're young in some point in life and then you're not young anymore, and the transition point when you're no longer young, after that point you start having aches and pains ... It's aching that everybody has. And when we're older we don't have the injury free capabilities that we have when we were younger, but you can persevere, you can push through it, you can be active, but some people don't." Record at 512–13. See Leslie v. Barnhart, 304 F.Supp.2d 623, 629–30 (M.D.Pa.2003) (finding that Dr. Askin's testimony comparing claimant's back pain to his own could not trump the credibility of statements about subjective symptoms made by somebody with an objectively established impairment).

that Plaintiff's testimony and the medical examinations revealed that he gets winded from light exertion, suffers from constant neck and back pain, and trusts neither his right arm nor his left leg to function without incident. Thus, this court concludes that the ALJ decision was not supported by substantial evidence and, therefore, must be reversed.

*Non–Exertional Limitations*

■ In addition to reaching a factual conclusion with respect to the Plaintiff's residual functional capacity that was unsupported by substantial evidence, the ALJ committed legal error by finding that "based on an exertional capacity for essentially the full range of light exertional work, and the claimant's age, education, and work experience, a finding of 'not disabled' is directed by medical-vocational Rule 202.16 for the period January 1, 1994, up to September 29, 2003." *Record* at 159. Such a finding was legally erroneous because the ALJ failed to consider the Plaintiff's considerable non-exertional limitations, in contravention of the Medical–Vocational Guidelines.

In conducting the fifth and final step of the sequential analysis, an ALJ consults the Medical–Vocational Guidelines, which are published by the Administration and intended to facilitate the determination of whether, based on the claimant's residual function capacity, he or she can adjust to any work that is available in the national economy. Under certain circumstances, the guidelines direct a finding of either disabled or not disabled. There exist other circumstances, however, under which a finding under the guidelines is not disposi-

tive. In such cases, while the ALJ may consider the guidelines as a framework for analysis, he or she must also rely on the testimony of a vocational expert to determine whether the claimant qualifies as disabled.

At the outset, an ALJ assessing the fifth step of the sequential evaluation process must determine whether the claimant's characteristics—namely age, education, relevant past work experience, and residual functional capacity-precisely match a particular grid rule's criteria. If they do not, then the guidelines are not dispositive. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(b), (d). In such cases, the ALJ must consider other evidence, such as the testimony of a vocational expert, to determine whether, given the claimant's personal characteristics, he or she can perform work that exists in significant numbers in the economy. If so, then the claimant is deemed not disabled. On the other hand, if the claimant's residual functional capacity and vocational factors exactly match the criteria set forth in a given rule, then the guidelines may be dispositive, depending on whether the claimant's limitations can be classified as exertional, nonexertional, or both.

When a claimant's limitations are solely exertional,[4] then the guidelines control the determination of whether he or she qualifies as disabled. 20 CFR § 404.1569a(b); *Sykes v. Apfel,* 228 F.3d 259, 263–65 (3d Cir.2000) (discussing *Heckler v. Campbell,* 461 U.S. 458, 467–70, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983)). By contrast, when the claimant's limitations are solely nonexertional,[5] the grids are not dispositive but

---

4. Exertional limitations are those that affect only a claimant's ability to meet the strength demands of employment. Examples include sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 404.1569a(b).

5. Nonexertional limitations affect a claimant's ability to meet the demands of employment apart from strength demands. 20 C.F.R. § 404.1569a(c)(1). Such limitations may include: difficulty functioning because of nervousness, anxiety, or depression; lack of

instead provide the ALJ with a decisional framework—to be considered in conjunction with additional evidence—for determining whether or not a disability exists. 20 CFR § 404.1569a(c)(2). Finally, for cases involving exertional and nonexertional limitations, the ALJ must first consult the grids to determine whether a finding of disability can be supported solely based on the claimant's exertional limitations. If so, then exclusive reliance on the grids is appropriate, and the claimant is deemed disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2). If, however, the grids do not direct a finding of disability based on the exertional limitations alone, then the ALJ may use the grids as a framework but must also consider all other relevant evidence—including the testimony of a vocational expert—to determine whether the claimant's nonexertional limitations render him or her incapable of performing available work and, therefore, disabled. *Id.*; *Sykes*, 228 F.3d at 266–68.

In the instant case, the ALJ found that the Guidelines directed a finding of not disabled despite the fact that the Plaintiff clearly suffers from both exertional and non-exertional limitations. This was plain legal error. While the Guidelines direct a finding of not disabled for a person with Plaintiff's characteristics who suffers from solely exertional limitations, such an individual who also suffers from non-exertional limitations cannot be found to be not disabled absent additional evidence, such as the testimony of a vocational expert, that those non-exertional limitations did not significantly erode the individual's ability to perform work. Here, even though a vocational expert testified at the hearing, there was no evidence that the ALJ relied upon anything other the grids in rendering his decision, despite the Plaintiff's severe non-exertional limitations. Instead, the ALJ explicitly held that a finding of not disabled was "directed" by the grids. *Record* at 159.

The record makes plain that Plaintiff has significant non-exertional limitations. In particular, he suffers from upper extremity radiculopathy, which results in right arm weakness and numbness, right upper extremity swelling, and causes Plaintiff to have difficulty reaching, grasping, and holding items. *Record* at 374. In addition, Plaintiff suffers from anxiety and depression. *See* 20 C.F.R. §§ 404.1569a(c)(1)(i)-(vi) (listing anxiety, depression, and difficulty with manipulative functions as examples of non-exertional limitations). Because the Plaintiff suffers from these non-exertional limitations, and because such limitations hinder his ability to perform work-related tasks, the ALJ's conclusion that the grids direct a finding of not disabled was legally erroneous and, therefore, must be reversed. The Plaintiff's non-exertional limitations clearly erode his occupation base, and, as such, he is entitled to receive disability benefits.

An appropriate Order follows.

### ORDER

**AND NOW**, this 23rd day of December, 2004, upon consideration of the parties' cross motions for summary judgment, it is hereby **ORDERED** that plaintiff's motion is **GRANTED** and defendant's motion is **DENIED**. The case is **REMANDED** to

___

concentration or attention-span; problems comprehending or remembering detailed instructions; visual or auditory impairments; intolerance to certain physical features of a work environment, such as dust or fumes; or problems with manipulative functions, such as reaching, stooping, handling, climbing, crawling, or crouching. 20 C.F.R. §§ 404.1569a(c)(1)(i)-(vi).

the Commissioner for a calculation of award and benefits.