

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-27-2003

# Mays v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4520

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Mays v. Comm Social Security" (2003). *2003 Decisions.* Paper 187.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/187

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 02-4520

CAROLYN P. MAYS,
Appellant

v.

JOANNE B. BARNHART,
Commissioner of Social Security

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civil Action No. 01-cv-05335)
District Judge: Honorable Michael M. Baylson

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 17, 2003

BEFORE: SLOVITER, ROTH and STAPLETON, Circuit Judges

(Opinion Filed      October 27, 2003      )

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Plaintiff Carolyn Mays ("Mays") appeals the denial of her claim for Disability Insurance Benefits ("DIB") and Disabled Widows Benefits ("DWB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434 (2002). With respect to Mays's DIB claim, the date she was last insured is December 31, 1997. With respect to her DWB claim, the month she was last insured is February 1996. Consequently, Mays would be entitled to DIB only if she met her burden of showing that she had become disabled before December 31, 1997, and she would be entitled to DWB only if she could show that she had become disabled before February 1996. The Administrative Law Judge ("ALJ") determined that Mays was not disabled prior to these relevant dates and denied her claims.[1] The District Court found substantial evidence to support the ALJ's denial and granted summary judgment for the Commissioner of the Social Security Administration ("Commissioner").

The parties are familiar with the factual setting and the procedural history of this matter. Since we write only for them, we do not provide a narrative summary of the evidence contained in the record. We will address in turn each of the assigned errors in the appeal and will there refer to the evidence where necessary to explain the Court's

---

[1]The ALJ did not disturb the Social Security Administration's finding that Mays was entitled to Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1385, or that her date of onset with respect to SSI benefits was August 1, 1998.

disposition.

The District Court had jurisdiction under 42 U.S.C. § 405(g) (2002) and we have jurisdiction under 28 U.S.C. § 1291 (2002). Although we review *de novo* the District Court's order for summary judgment, "our review of the ALJ's decision is more deferential as we determine whether there is substantial evidence to support the decision of the Commissioner." *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Substantial evidence has been defined as "less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Secretary of the United States Dep't of Health & Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995). "It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). In determining whether substantial evidence exists, "we are not permitted to weigh the evidence or substitute our own conclusions for that of the [ALJ]." *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002). Accordingly, "[w]here the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).

I.

In order to obtain DIB or DWB, a claimant must show that he or she is under a "disability." See 42 U.S.C. §§ 423(a), 402(e)(1) (2002). The Act defines a

"disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The Act further dictates that a claimant "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A). The regulations promulgated under the Act utilize a five-step sequential evaluation process for determining whether a claimant is under a disability. *See* 20 C.F.R. § 404.1520(a)(1) (2002). We have described this process as follows:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S.Ct. 2287, 2290-91, 96 L.Ed.2d 119 (1987). In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.

> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five[.] Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994).

> If the claimant is unable to resume her former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled.

*Burnett v. Commissioner of Social Sec. Admin.*, 220 F.3d 112, 118-119 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999)).

II.

In this case, the ALJ addressed the first four steps and found that: (1) Mays had not engaged in substantial gainful activity since 1992; (2) Mays's depression did not constitute a severe impairment prior to the relevant dates of last insurance; (3) Mays's right shoulder impingement syndrome did constitute a severe impairment during the relevant time periods; (4) Mays's right shoulder impingement syndrome did not meet or equal the criteria for a listed impairment; and (5) Mays had the residual functional capacity to perform her past relevant work as an intake worker/receptionist. The ALJ did not reach step five of the sequential evaluation process.

Mays alleges five grounds of error in support of her request that this Court vacate the District Court's order granting summary judgment to the Commissioner. We address each assignment of error in turn.

-5-

A.

Mays first challenges the ALJ's determination, at step two, that her depression did not constitute a severe impairment prior to the relevant dates of last insurance. Mays argues that this finding is not supported by substantial evidence for two reasons. First, she notes that her own treating physician, Dr. Peter Arcuri, had prescribed anti-depressant medication to her for depression since the 1980s, had told her to see a psychiatrist in 1979, and had made notations in her medical records that she suffered from "psych anxiety" and "psych depression" on June 1, 1996 and August 30, 1997, respectively. Second, Mays notes that, on March 25, 1999, the Commissioner's own examining consultant, Dr. Beth Farber, diagnosed Mays with Major Depression and Borderline Personality Disorder. Mays argues that the ALJ ignored Dr. Farber's report, which would have shown that Mays was suffering from a mental illness since early adulthood.[2]

As mentioned above, step two of the five-step sequential evaluation process requires the ALJ to determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). According to the regulations promulgated under the Act, an impairment is not a severe impairment if it does not "significantly

_____

[2]Borderline Personality Disorder, Mays argues, is a mental illness that is stated by the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* 650 (4th ed. 1994) ("DSM-IV") to begin by early adulthood. She therefore believes that the ALJ should have found her to be clinically diagnosed with a mental illness prior her relevant dates of last insurance.

-6-

limit[] [the claimant's] physical or mental ability to do basic work activities." *Id.* §§

404.1520(c), 404.1521(a). Basic work activities are "abilities and aptitudes necessary to

do most jobs," including:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing,
> pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing,
> and speaking; (3) Understanding, carrying out, and remembering simple
> instructions; (4) Use of judgment; (5) Responding appropriately to
> supervision, co-workers and usual work situations; and (6) Dealing with
> changes in a routine work setting.

*Id.* § 140.1521(b). Analyzing the statutory and regulatory framework, several courts have

found the requirements of step two to be "a *de minimis* screening device to dispose of

groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen*

*v. Yuckert,* 482 U.S. 137, 153-54 (1987) (O'Connor, J., concurring)); *see also McDonald*

*v. Secretary of Health & Human Servs.,* 795 F.2d 1118, 1124 (1st Cir.1986).

Accordingly, "an impairment or combination of impairments can be found 'not severe'

only if the evidence establishes a slight abnormality that has 'no more than a minimal

effect on an individuals [sic] ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting Social

Security Ruling 85-28 (1985)).

In this case, the ALJ considered all of the evidence and testimony in the record and

found that there was no medical evidence of any mental health treatment prior to

December 1998. Dr. Arcuri had responded to Mays's sporadic complaints of depression

by prescribing anti-depressants and telling her to seek a psychiatrist. The ALJ explained,

however, that symptoms of depression could not, alone, constitute a medically

-7-

determinable impairment. *See* 20 C.F.R. § 404.1529(b) ("Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged."). The ALJ concluded that there were no objective medical signs or laboratory findings of depression "until well after [Mays's] date of last insurance."

The ALJ's finding is supported by substantial evidence in the record. Mays had never seen a psychiatrist during the relevant periods of insurance and had not been clinically diagnosed with a mental illness. The ALJ correctly noted that the sole evidence of any such clinical finding, by Dr. Farber, took place well after the relevant dates of last insurance. Moreover, the record indicates that, despite any depression, Mays was capable of performing basic work activities. In her Disability Report and Daily Activities Questionnaire, Mays stated that she routinely performed a variety of tasks that are consistent with basic work activities. Accordingly, we find the ALJ's decision – that Mays's depression did not constitute a severe impairment at step two – to be supported by substantial evidence.

B.

Second, Mays argues that the ALJ's finding that she was able to perform "light"

-8-

work[3] during the relevant periods did not properly consider the non-exertional

consequences of her right shoulder impingement syndrome. Mays notes that the *Merck*

*Manual of Diagnosis and Therapy* 507 (17th ed. Merck Research Labs. 1999) states that

patients suffering from a shoulder impingement syndrome may experience pain during the

course of non-exertional reaching and manipulative activities, and that such activities may

aggravate the patient's condition. She argues that the ALJ incorrectly failed to consider

this in determining Mays's residual functional capacity. We disagree. The ALJ's

determination as to a claimant's residual functional capacity must be based on medical

evidence in the record. *See* 20 C.F.R. § 404.1545(a)(3). The ALJ must also provide a

"clear and satisfactory explication" of the basis on which his determination rests. *See*

*Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

Here, there was ample medical evidence in the record, including the reports of Dr.

Brian J. Sennett, Dr. Emil Sfedu, Dr. Arculi, and Mays's own Disability Report, for the

ALJ to conclude that Mays was not limited in her reaching and manipulative abilities

during the relevant periods. The ALJ made specific reference to these reports and

---

[3]According to 20 C.F.R. § 404.1567(b), light work involves:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying
> of objects weighing up to 10 pounds. Even though the weight lifted may be
> very little, a job is in this category when it requires a good deal of walking
> or standing, or when it involves sitting most of the time with some pushing
> and pulling of arm or leg controls. To be considered capable of performing
> a full or wide range of light work, you must have the ability to do
> substantially all of these activities.

explained that they formed the basis of his decision. The ALJ also explained that Mays's allegations in her hearing testimony (i.e., that she was unable to comb her hair) could not be fully credited in light of this medical evidence. Mays's current reliance on a description contained in a diagnostic manual is not sufficient for this Court to reject the findings of the ALJ.

C.

Third, Mays argues that the ALJ's decision is not supported by substantial evidence because the record contains no expert medical opinion indicating that Mays possessed a residual functional capacity to perform light work. Mays points to the Commissioner's evaluating physician, Dr. Emil Sfedu, who reported on October 21, 1998 that Mays had no range of motion in her right shoulder and concluded that her physical activities should be restricted to below sedentary levels. This argument fails for several reasons. Primarily, the ALJ is responsible for making a residual functional capacity determination based on the medical evidence, and he is not required to seek a separate expert medical opinion. *See* 20 C.F.R. §§ 404.1527(e), 404.1546(c). Furthermore, the medical evidence submitted to the ALJ was sufficient to support his conclusion that Mays's physical impairments were not as disabling as her hearing testimony indicated. In particular, the ALJ relied on Mays's treating physician, Dr. Arcuri, whose treatment notes tracked Mays's physical complaints between June 1995 and August 1998. The ALJ noted that the record did not indicate any emergency room visits, hospitalizations, or office care

-10-

(other than for routine maintenance) for Mays's shoulder condition that would indicate an uncontrolled condition. We believe that the ALJ's reliance on Dr. Arcuri's records, rather than Dr. Sfedu's report, was appropriate given that Dr. Sfedu performed his examination long after Mays's dates of last insurance.[4] Accordingly, the ALJ's finding that Mays possessed a residual functional capacity for light work is supported by substantial evidence.

## D.

Fourth, Mays argues that the ALJ's decision is not supported by substantial evidence because he reached only a lay opinion as to whether Mays's previous job required light work. Mays claims that the ALJ should have heard vocational evidence before deciding that her past relevant work required exertion at the light level. She points out that vocational experts should have been used because her own Disability Report notes that the heaviest weight lifted during her previous employment was fifty pounds – a weight that is consistent with work at the "medium" level, not the "light" level. *See* 20 C.F.R. § 404.1567(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.").[5]

---

[4]As the Commissioner suggests in its brief, the record indicates that Mays's condition began to deteriorate sometime in 1998, after her insured status had expired.

[5]The Commissioner responds that this argument has been waived because it was not presented to the District Court. We address it, however, because Mays's Disability Report, which is contained in the record, bears on whether the ALJ's classification of Mays's past relevant work is supported by substantial evidence.

-11-

We disagree with Mays's assignment of error. At step four of the sequential evaluation process, the decision to use a vocational expert is at the discretion of the ALJ. *See* 20 C.F.R. § 404.1560(b)(2); Social Security Ruling 00-4p (2000). The Commissioner has noted that such experts are used to "resolve complex vocational issues." Social Security Ruling 00-4p. In determining the exertional level of the claimant's past relevant work, the ALJ is also entitled to rely on the *Dictionary of Occupational Titles* (4th ed. 1991) ("*DOT*"). *See* 20 C.F.R. §§ 404.1560(b)(2), 404.1566(d)(1), 404.1567(a).

Here, the ALJ heard Mays's own testimony that she worked as a "receptionist/intake worker." The *DOT* lists both "receptionist" and "intake worker" as occupations performed at a "sedentary" exertional level. *See DOT* 237.367-038, 195.107-010.[6] The ALJ also heard Mays testify as to the work she performed during her previous employment. Such evidence did not suggest any complex vocational issues. Based on this evidence, the ALJ concluded that the Mays's past relevant work was performed at the light level. The fact that Mays indicated on her Disability Report that she had, at some point, lifted fifty pounds, does not, in our view, undermine the ALJ's conclusion.

E.

Finally, Mays argues, with respect to the Appeals Council's denial of review in this case, that its failure to consider Mays's letter brief "is an abuse of discretion and/or

---

[6]Work at the sedentary level is included within the category of light work. *See* 20 C.F.R. § 404.1567(b).

-12-

implicates 'fundamental fairness.'" We do not address these arguments because, under 42 U.S.C. § 405(g), we have statutory authority to review only the final decision of the Commissioner. The final decision of the Commissioner in this case is the decision of the ALJ. *See* 20 C.F.R. § 404.955(b); *see also Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) ("If the Appeals Council denies the request for review, the ALJ's decision is the Commissioner's final decision."). Furthermore, we do not have statutory authority to review the Appeals Council's decision to deny review. *Matthews*, 239 F.3d at 594.

Mays also argues that the Commissioner incorrectly excluded her letter brief to the Appeals Council from the transcript filed with the District Court. We reject this argument as well because 42 U.S.C. § 405(g) requires that the transcript submitted by the Commissioner need only include "the evidence upon which the findings and decision complained of are based." Here, the letter brief submitted by Mays to the Appeals Council was not considered by the ALJ and was therefore not required to be included in the transcript submitted to the District Court.

## III.

For the foregoing reasons, we find the ALJ's decision to be supported by substantial evidence and we will affirm the judgment of the District Court.

TO THE CLERK:

Please file the foregoing not precedential opinion.

/s/ Walter K. Stapleton

_____

Circuit Judge