Matthew W. Brann, United States District Judge
On December 12, 2018, Magistrate Judge Joseph F. Saporito issued a Report and Recommendation[1] on Plaintiff's Complaint.[2] Plaintiff filed objections to that Report and Recommendation on December 26, 2018.[3]
This Court has conducted a de novo review of the objected-to portions of the Report and Recommendation and finds that Plaintiff's objections are merely restatements of arguments previously made to, and addressed by, Magistrate Judge Saporito. Because the Court agrees with Magistrate Judge Saporito's analysis and conclusions, IT IS HEREBY ORDERED THAT :
1. The Report and Recommendation of Magistrate Judge Joseph F. Saporito, ECF No. 17, is ADOPTED IN ITS ENTIRETY .
2. The decision of the Commissioner of Social Security is AFFIRMED .
3. Plaintiff's request for an award of benefits or remand for a new administrative hearing is DENIED .
4. The Clerk of Court is directed to enter judgment in favor of Defendant and to close this case.
REPORT AND RECOMMENDATION
JOSEPH F. SAPORITO, JR., U.S. Magistrate Judge
Plaintiff, Christopher Allen Myers, is seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).
This matter has been referred to the undersigned United States Magistrate Judge to prepare a report and recommended disposition pursuant to the provisions of 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons expressed herein, we have found that the final decision of the Commissioner of Social Security is supported by substantial evidence. Accordingly, it is recommended that the final decision of the Commissioner denying Myers's claims for benefits be AFFIRMED , and that Myers's request for a new hearing or award of benefits be DENIED.
*532 I. Background and Procedural History
Myers is an adult individual, born on January 7, 1979. Myers was thirty-five years of age at the time of his alleged onset of disability-August 11, 2014. (Tr. 13).
Myers's age at the onset date places him in a category of a "younger person" under the Commissioner's regulations whose age generally does not affect his ability to adjust to other work.
On April 29, 2015, Myers protectively filed his application for benefits under Titles II and XVI of the Social Security Act. In both applications, he alleged that he became disabled on August 11, 2014. (Tr.13). Myers's alleged impairment is a back issue. (Tr. 94). His claims were initially denied on October 1, 2015. On November 18, 2015, Myers filed a written request for an administrative hearing. That request was granted. On June 1, 2017, Myers appeared and testified at a hearing before Administrative Law Judge ("ALJ") Michele Stolls in Wilkes-Barre, Pennsylvania. Plaintiff was represented by counsel, Blake Griffin, at the hearing. Additionally, Vocational Expert ("VE") Gerald W. Keating also appeared and testified. (Tr. 13).
On September 5, 2017, the ALJ issued an unfavorable decision in which she concluded that, considering Myers's age, education, work experience, and residual functional capacity, there are jobs that he can perform that exist in significant numbers in the national economy. Myers then filed a timely complaint on March 16, 2018, in this court. (Doc. 1). In his complaint, Myers alleges that the final decision of the Commissioner is not supported by substantial evidence and is contrary to law and regulation. (Doc. 1, ¶ 8).
On May 23, 2018, the Commissioner filed her answer in which she maintains that the ALJ's decision was made in accordance with the law and regulations and the findings of fact are supported by substantial evidence. (Doc. 10).
This matter has been fully briefed by the parties and is ripe for decision. (Docs. 12, 15, and 16).
The plaintiff was born on January 7, 1979. (Tr. 94). He completed a high school education. (Tr. 190). Myers previously worked as a radiator repairman, countertop assembler and coupler. Myers stated he stopped working because it is difficult for him to function on an everyday basis with the pain. (Tr. 36).
Myers lives with his parents in a home in Port Trevorton, Pennsylvania, which is in the Middle District of Pennsylvania. (Tr. 34-35). Myers stated that he is able to prepare meals and take care of his personal needs. (Tr. 40, 170). He stated he is unable to help with chores around the house because of the necessity to bend, squat, and twist. (Tr. 40-41). He stated he is able to sit on the back porch. (Tr. 172).
Myers stated that besides taking medication, he is careful what he does and tries not to overdo anything in order to manage his pain. (Tr. 41). He stated he is not in any one position all day, he is usually up and down. (Tr. 41). He stated that he has bad days and worse days. He stated that he has difficulty sleeping at night, and the level of difficulty sleeping has a direct correlation to his pain the next day. (Tr. 42). He stated that from Sunday to Sunday, on average, he has two good days. (Tr. 42).
Myers stated that when he travelled to Florida, he had difficulty with sitting on the flights and difficulty handling his luggage. (Tr. 42).
Myers stated that he has pain in his entire lower back. (Tr. 43). He stated he is able to lift approximately 8 to 10 pounds without pain (e.g., a case of water/soda).
*533 (Tr. 174). He stated that he is able to follow written and spoken instructions and gets along with authority figures. (Tr. 174-75). He is able to handle stress and changes in routine. (Tr. 175).
II. Standard of Review
When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. See 42 U.S.C. § 405(g) (sentence five); id. § 1383(c)(3); Johnson v. Comm'r of Soc. Sec. , 529 F.3d 198, 200 (3d Cir. 2008) ; Ficca v. Astrue , 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood , 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales , 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala , 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n , 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart , 304 F.Supp.2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin , No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker , 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan , 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca , 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues....").
To receive disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) ; id. § 1382c(a)(3)(A); see also 20 C.F.R. § 404.1505(a) ; id. § 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment[1] that makes it impossible to do his or her previous work or any other substantial gainful activity[2] that exists *534 in the national economy. 42 U.S.C. § 423(d)(2)(A) ; id. § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a) ; id. § 416.905(a).
The Commissioner follows a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a) ; id. § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[3] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC");[4] and (5) whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. Id. § 404.1520(a) ; id. § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 42 U.S.C. § 423(d)(5) ; id. § 1382c(a)(3)(H)(i); 20 C.F.R. § 404.1512 ; id. § 416.912; Mason , 994 F.2d at 1064. Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f) ; id. § 416.912(f); Mason , 994 F.2d at 1064.
III. Discussion
A. The ALJ's decision denying Myers's Claim for Disability
In her September 5, 2017, written decision denying Myers's claims, the ALJ found that Myers met the insured status requirements of the Social Security Act through December 31, 2017. (Tr. 15). At step one, the ALJ found that Myers had not engaged in substantial gainful activity since August 11, 2014, his alleged onset date. (Tr. 15). At step two, the ALJ found that Myers had the following medically determinable severe impairment: degenerative disc disease of the lumbar spine with radiculopathy, status post-surgery. (Tr. 15). Additionally, the record disclosed a remote history of right shoulder surgery, but this condition was found to cause no more than minimal limitations on Myers's ability to perform basic work-related activities and therefore was found to be non-severe. At step three, the ALJ found that Myers did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.
Between steps three and four of the sequential evaluation process, the ALJ assessed Myers's RFC. After evaluating the relevant evidence of record, the ALJ found that Myers had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations:
*535 [H]e is limited to occupations that require no more than occasional postural maneuvers, such as balancing, stooping and climbing on ramps and stairs. He must avoid occupations that require climbing on ladders, ropes and scaffolds, kneeling, crouching or crawling. He must avoid occupations that require pushing/pulling with the lower extremities to include the operation of pedals. He must avoid concentrated prolonged exposure to temperature extremes, vibration as well as extreme dampness/humidity. He is limited to occupations that do not require exposure to hazards such as dangerous machinery and unprotected heights. He is limited to simple, routine, repetitive work, generally described as unskilled, with no more than a specific vocational preparation (SVP) of 2.
(Tr. 16).
In making her factual findings with respect to Myers's RFC, the ALJ was required to evaluate all of Myers's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529, 416.929, and Social Security Ruling 96-4p, and to assess the weight of the opinion evidence of record under 20 C.F.R. §§ 404.1527, 416.927, and Social Security Rulings 96-2p, 96-5p, 96-6p, and 06-3p.
The ALJ found, based on Myers's RFC, that he is able to perform less than a full range of sedentary work. The VE testified that Myers would be unable to return to his past work. Therefore, at step four, the ALJ concluded that Myers is unable to perform his past relevant work as a radiator repairman, countertop assembler, and coupler. (Tr. 19).
At step five, the ALJ considered Myers's age, education, work experience, and residual functional capacity, and concluded that there are jobs that exist in significant numbers in the national economy that Myers can perform. The VE testified that, given all of Myers's limitations, he would be able to perform requirements of representative occupations such as: assembler of small products, DOT # 739.687-030, with 20,000 jobs nationally; document preparer, DOT # 249.587-018, with 15,000 jobs nationally; and surveillance monitor, DOT # 379.367-010, with 15,000 jobs nationally.
Based on this information, the ALJ concluded that Myers could engage in other work that existed in significant numbers in the national economy despite his medically determinable impairments.
B. (a) The ALJ's decision was based on substantial evidence.
Myers argues three assignments of error: (1) the ALJ erred by failing to develop the record; (2) the ALJ erred in assessing an RFC with no professional guidance and instead relying on the lay opinion of an adjudicator; and (3) the RFC is not supported by substantial evidence. (Doc. 12, at 10).
It is the ALJ's exclusive responsibility as the fact-finder to evaluate medical opinions-including opinions from a treating physician-state agency consultants, and medical examiners, and decide whether they are supported by and consistent with the rest of the record. 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e) ; Richardson v. Perales , 402 U.S. 389, 399, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The ALJ is not required to accept a treating physician's opinion (or any opinion in the record) where the opinion is not supported by clinical evidence, is internally inconsistent, or is not consistent with other evidence of record. 20 C.F.R. § 416.927(c)(2). Even *536 though a treating physician's opinion may generally carry greater weight then a non-examining consultant, if "the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may chose whom to credit but cannot reject evidence for no reason or for the wrong reason." See Coleman v. Comm'r of Soc. Sec. , 494 Fed. App'x 252, 254 (3d Cir. 2012) (quoting Morales v. Apfel , 225 F.3d 310, 317 (3d Cir. 2000) ; Brown v. Astrue , 649 F.3d 193, 196 n.2 (3d Cir. 2011) ("The law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity.") )
A claimant's statements alone are not enough to establish a physical or mental impairment. 42 U.S.C. § 423(d)(5) ; 20 C.F.R. § 404.1528(a). "[T]here must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence, would lead to a conclusion that the individual is under a disability." 42 U.S.C. § 423(d)(5)(A). When assessing credibility, the ALJ must find specific reasons supported by the evidence in the record. Soc. Sec. Ruling 96-7p, 1996 WL 374186. It is the ALJ's responsibility to determine the extent to which a claimant is accurately stating his degree of pain and level of disability. See Hartranft v. Apfel , 181 F.3d 358, 362 (3d Cir. 1999).
In this case, the ALJ considered all of the record medical evidence and found that Myers's medical records did not support his allegations regarding the intensity, persistence and limiting effects of the symptoms and his impairments. (Tr. 17). The ALJ considered Myers's degenerative disc disease of the lumbar spine and his status-post lumbar laminectomy when assessing his RFC. (Tr. 18). The ALJ also considered treatment records and evidence of Myers's activities when assessing the RFC and limited Myers to sedentary work, with additional limitations due to Myers's physical complaints. (Tr. 16).
Under the regulations, it is the ALJ who has the exclusive responsibility for making an RFC determination "based on the medical evidence, and she is not required to seek a separate expert medical opinion." Mays v. Barnhart , 78 Fed. App'x 808, 813 (3d Cir. 2003). The ALJ - not treating or examining physicians or state agency consultants - must make the ultimate disability and RFC determinations. Chandler v. Commissioner of Social Sec. , 667 F.3d 356, 361 (3d Cir. 2011).
The ALJ reasonably evaluated the physical limitations. She considered that Myers testified that he cannot work due to the pain he has everyday. (Tr. 36). The ALJ noted that Myers had undergone back surgery and alleges that he is unable to sit, stand, lay or walk for prolonged periods of time and that he needs to change positions often. (Tr. 170). She noted that he can take care of his personal needs and he is able to mow the grass with breaks. (Tr. 171).
The ALJ also took into consideration a statement submitted by Myers's sister, Michelle Harman, who stated that Myers's pain is hard to witness and that he seemed worse since the surgery. (Tr. 235).
The ALJ reviewed the treatment records of Rodwan K. Rajjoub, M.D. and considered that Myers's treatment included physical therapy following surgery. Records note that in July 2014, Dr. Rajjoub felt that Myers was doing well with some residual soreness and was able to return to regular work duty. (Tr. 348). Upon returning to work after his laminectomy, Myers reinjured his back while *537 climbing a ladder and carrying a five gallon bucket of tools. (Tr. 398, 334). He was seen by Dr. Rajjoub on September 8, 2014, who indicated that Myers would need to be off work for two weeks. He recommended physical therapy and prescribed Flexeril. (Tr. 354). Myers followed up with physical therapy. (Tr. 406-20).
The ALJ reviewed the records of Sonia Reich, CRNP, and noted that Myers was seen on June 18, 2015 for completion of forms and medication refills. Ms. Reich's notes indicate that Myers's low back pain, back stiffness, and lower extremity pain were stable. (Tr. 476-77). His physical examinations in the records show negative straight leg raising, normal gait and that Myers's pain improved with medications. (Tr. 467, 470, 472, 474). The ALJ noted that the record shows that Ms. Reich completed an RFC assessment in October 2015 in which she noted that Myers is seen every 3 to 4 months for lumbar radiculopathy and degenerative disc disease of the spine. She felt that Myers could walk two blocks, sit for 30 minutes at a time, up to 3-hours in an 8-hour day and stand/walk for 15 minutes at a time, up to 2-hours in an 8-hour day. Myers would need to reposition every 30-45 minutes and could lift and carry 10 pounds occasionally, but would be absent from work 1-2 days per month. (Tr. 447-48).
Ms. Reich completed a physical assessment in March 2017, where she noted that Myers had no side effects from his medications and that Myers could walk one city block, sit for 4-hours in an 8-hour day and stand/walk for 4 hours in an 8-hour day. She felt Myers would need unscheduled breaks and could lift and carry 10 pounds. She felt Myers would miss 3-4 days of work per month. (Tr. 461-62).
After careful consideration of the record, the ALJ gave little weight to the opinion of Ms. Reich, not only because she is not an acceptable medical source, but also because her findings were not supported by the objective medical evidence including her own records. (Tr. 19).
The ALJ then reviewed the records of Myers's chiropractor, David Watto, D.C., whose records showed post-laminectomy syndrome, intervertebral disc disorder and lumbago with sciatica. Dr. Watto felt Myers was unable to work since his back surgery. (Tr. 477). The ALJ noted that in Dr. Watto's physical assessment, he found that Myers could walk 1 city block, sit for 1 hour in an 8-hour day and stand/walk for 30 minutes in an 8-hour day, could lift and carry 10 pounds, and would be absent from work up to 4 days per month. (Tr. 464-65).
As for the assessment of Dr. Watto, the ALJ again gave little weight because his findings are not supported by the record and he is not an acceptable medical source.
As noted by the ALJ, Dr. Watto and Ms. Reich are not "acceptable medical sources" as defined by the Social Security regulations. See 20 C.F.R. §§ 404.1502, 416.902. Because they are not "acceptable medical sources," Dr. Watto and Ms. Reich cannot provide medical opinions, and their reports cannot establish the existence of an impairment, although they can be used to understand how an impairment might affect an individual's ability to work. See 20 C.F.R. §§ 404.1513, 416.913 ; Soc. Sec. Ruling 06-3p, 2006 WL 2329939, at *2. Although the regulations do not explicitly apply to "other sources," id. , the factors outlined in 20 C.F.R. §§ 404.1527 and 416.927 may be used as basic principles that apply to the consideration of all opinions. These factors include: how long the source has known or seen the claimant; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support the opinion; how well the source explains the opinion; whether the source has a specialty *538 or area of expertise related to the claimant's impairment; and any other relevant factors that tend to support or refute the opinion. See C.F.R. § 416.927; Soc. Sec. Ruling 06-3p, 2006 WL 2329939, at *5.
Here, the ALJ considered all of the evidence including, Myers's testimony, the statement of Myers's sister, and the record as a whole, including Myers's activities which included mowing the grass with breaks and caring for his young son when he visited. (Tr. 17, 19, 37, 171, 173). Myers also went on a vacation to Florida for a month in January 2016 and was shoveling snow in March 2017. (Tr. 467). The ALJ found that considering all of this, the record supported the finding that Myers was capable of a limited range of sedentary work.
The record simply does not support Myers's alleged level of complaints. Myers's argument on this issue is without merit. Here, substantial evidence supports the ALJ's finding and the ALJ sufficiently discussed and analyzed the evidence of record and specifically found that Myers's allegations were inconsistent with the record and not supported by substantial evidence. (Tr. 17).
Next, Myers argues that the ALJ relied on her own "lay opinion" as the basis for the RFC finding. In this case, it does not appear that the RFC assessment was based on the ALJ's own "lay opinion." Although the ALJ does not give significant weight to Ms. Reich or Mr. Watto, the ALJ based her decision on the findings of the entire medical/evidence of record.
Myers's argument is contrary to the controlling regulations and pertinent Third Circuit precedent. Nothing in the Social Security Act or governing regulations requires the ALJ to obtain matching "opinion" evidence in order to fashion a claimant's RFC. The controlling regulations are explicit that the formulation of a claimant's RFC from the broad record before him is an administrative responsibility for the ALJ, not a treating or other physician. "[T]he ALJ is responsible for making an RFC determination ... and he is not required to seek a separate expert medical opinion." Mays , 78 Fed. App'x at 813 (emphasis added). See also Butler v. Colvin , 3:15-CV-1923, 2016 WL 2756268, at *13 n.6 (M.D. Pa. May 12, 2016) (rejecting the argument that a medical opinion is required to craft an RFC). "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart , 174 Fed. App'x 6, 11 (3d Cir. 2006). An ALJ "is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision." Chandler , 667 F.3d at 362. The ALJ is expressly not required to "seek outside expert assistance." Id. (citing 20 C.F.R. §§ 404.1546(c), 404.1527(d), and Soc. Sec. Ruling 96-5p). An ALJ, therefore, is not limited to choosing between competing opinions in the record, and may instead develop his own." Glass v. Colvin , Civil Action No. 14-237-E, 2015 WL 5732175, at *1 n.1 (W.D. Pa. Sept. 30, 2015).
Here, it was the ALJ's job to review the evidence of record and assess a proper RFC. The ALJ found that neither Ms. Reich or Mr. Watto's opinions were supported by the objective medical evidence. (Tr. 19). The records simply do not support the findings of Ms. Reich and Mr. Watto's extreme limitations. In making her finding, the ALJ's RFC assessment included simple, routine, repetitive work with no more than a SVP of 2 and accounted for Myers's pain to the extent that it may affect his attention and concentration. (Tr. 16).
*539 Finally, Myers asserts that the record was not fully developed. Although the ALJ has the duty to assist a claimant in developing a full and fair record, Ventura v. Shalala , 55 F.3d 900, 902 (3d Cir. 1995), she is not required to "search out relevant evidence which might be available, since that would in effect shift the burden of proof to the government." Rather, the ALJ's duty is to ensure that the evidence is sufficient to make a benefit determination and to resolve any material conflicts or ambiguities in the evidence. Furthermore, because Myers was represented by counsel at the administrative level, the ALJ is entitled to assume that the claimant is making the strongest case possible for benefits. Glenn v. Sec'y of Health & Human Servs. , 814 F.2d 387, 391 (7th Cir. 1987). In this case, the ALJ complied with her duty to ensure that the record was fully developed.
In fact, Myers's counsel did not request assistance from the ALJ in obtaining any additional records nor did counsel request further examinations. Myers asserts that the ALJ should have obtained a consultative examination. Beyond what was produced at the hearing, no further evidence was needed for the ALJ to decide Myers case. Before the ALJ issued her decision denying benefits, Myers's counsel could have requested the ALJ to order a consultative evaluation, but made no such request.
The record shows that Myers was referred to a consultative examiner at the initial level because there was an absence of post-operative evidence. (Tr. 214). Myers attempted to attend the consultative examination, but left the medical office because of the long wait time and he felt uncomfortable around the other patients. He informed them that he did not want to reschedule. (Tr. 214). Myers stated that he would wait for his own records. Therefore, the record was developed with Myers's own records, which is what he requested. (Tr. 105, 214).
The decision to seek medical expert testimony or order a consultative examination is a discretionary decision left to the ALJ. See 20 C.F.R. § 404.1527(e)(2)(iii) (stating that the ALJ "may" ask for medical expert testimony); id. §§ 404.1517, 404.1519a(a) (stating that a consultative examination "may" be ordered). Here, the record contained all of Myers's relevant treatment records, as his counsel acknowledged at the hearing. Because the record contained sufficient evidence for the ALJ to make a disability determination, no further development was warranted.
If Myers believed that additional medical opinion evidence or medical evaluations would help him prove his disability claim, he was in the best position to secure that evidence, and it was his clear burden to do so. 42 U.S.C. § 423(d)(5)(a) ; 20 C.F.R. § 404.1512 ; Money v. Barnhart , 91 Fed. App'x 210, 215 (3d Cir. 2004). The ALJ was permitted to presume that Webster had put forth his best case since he was represented by counsel. Skinner v. Astrue , 478 F.3d 836, 842 (7th Cir. 2007). Thus, the ALJ did not err. We are not persuaded otherwise by Myers's argument.
Based on the entirety of the foregoing, and all the evidence in the ALJ's detailed decision, Myers's assertions of error are without merit, and we find that substantial evidence supports the ALJ's residual functional capacity determination.
IV. Recommendation
Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the decision of the Commissioner of Social Security be AFFIRMED and that Myers's requests for the award of benefits or remand *540 for a new administrative hearing be DENIED.

ECF No. 17.

ECF No. 1.

ECF No. 18.

A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3) ; id. § 1382c(a)(3)(D).

"Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510 ; id. § 416.910.

An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

"Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. § 404.1545(a)(1) ; id. § 416.945(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. Id. § 404.1545(a)(2) ; id. § 416.945(a)(2).